# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

### NOTICE OF ENTRY OF
### JUDGMENT ACCOMPANIED BY OPINION   ★   MAR 0 1 2005   ★

OPINION FILED AND JUDGMENT ENTERED: 02/17/05     LONG ISLAND OFFICE

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above.  The mandate will be issued in due course.

Information is also provided about petitions for rehearing and petitions for rehearing en banc.  The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the Appellant(s) under Rule 39.  The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs.  A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs.  If costs are awarded to the government, they should be paid to the Treasurer of the United States.  Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements.  In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se.  Payment of costs should not be sent to the court.  Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise.  Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed to FRAP 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.

JAN HORBALY
Clerk

cc:  JAMES B. HICKS
     MARVIN S. GITTES

RATES TECHNOLOGY V NORTEL NETWORKS, O4-1212
DCT - 02-CV-4570

CLERK'S OFFICE COPY

# United States Court of Appeals for the Federal Circuit

04-1212

RATES TECHNOLOGY INC.,

Plaintiff-Appellant,

v.

NORTEL NETWORKS CORPORATION,

Defendant-Appellee.

James B. Hicks, Ervin, Cohen & Jessup LLP, of Beverly Hills, California, argued for plaintiff-appellant.

Marvin S. Gittes, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., of New York, New York, argued for defendant-appellee.  With him on the brief were Richard G. Gervase, Jr. and Carrie Kei Heim.

Appealed from:  United States District Court for the Eastern District of New York

Senior Judge Leonard D. Wexler

# United States Court of Appeals for the Federal Circuit

04-1212

RATES TECHNOLOGY INC.,

Plaintiff-Appellant,

v.

NORTEL NETWORKS CORPORATION,

Defendant-Appellee.

_____

DECIDED:  February 17, 2005

_____

Before MICHEL, Chief Judge, RADER and LINN, Circuit Judges.

MICHEL, Chief Judge.

Rates Technology Inc. ("RTI") appeals the dismissal for lack of personal jurisdiction of its amended complaint for infringement of U.S. Patent No. 4,209,668 ("the '668 patent") against Nortel Networks Corporation ("NNC") and its counterclaim-in-reply for infringement of the same patent against NNC and against a related but distinct corporation, Nortel Networks, Inc. ("NNI").   The appeal was submitted after oral argument on January 11, 2005.  We agree with the district court that NNC, having raised the affirmative defense of no personal jurisdiction in a timely answer, did not, and indeed could not, waive its jurisdictional objections by merely asserting permissive counterclaims against RTI in the same pleading.   We further hold that RTI's counterclaim-in-reply against both NNC and NNI was dismissible as an improper pleading, although for different reasons as to each.   Accordingly, we affirm the district court's dismissal of the entire action.

BACKGROUND

On August 16, 2002, RTI filed a complaint for infringement of the '668 patent in the United States District Court for the Eastern District of New York.  RTI alleged that NNC, a Canadian corporation, is the successor in interest to other Nortel companies, including Northern Telecom, Inc., that infringed the '668 patent.  RTI then filed an amended complaint, adding Verizon Communications, Inc. as a codefendant.[1]  Although RTI named NNC (not NNI) as a defendant, RTI served its first amended complaint on the designated agent for NNI.  On October 14, 2002, counsel for NNC informed RTI that it had served NNI, not a named party to the lawsuit, rather than NNC.  Counsel for NNC, however, ultimately accepted service on behalf of its client.

On October 29, 2002, NNC answered the complaint, raising lack of personal jurisdiction as an affirmative defense.  NNC also counterclaimed for declaratory judgment of noninfringement, invalidity, and unenforceability of the '668 patent, as well as for unfair competition and patent misuse.  In its first amended answer, filed November 15, 2002, NNC again objected to personal jurisdiction, and sought a declaration of noninfringement of two additional RTI patents, U.S. Patent Nos. 5,425,085 ("the '085 patent") and 5,519,769 ("the '769 patent").

After obtaining leave as required by the rules of the trial judge, on January 24, 2003, NNC moved to dismiss RTI's amended complaint, inter alia, for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  In a supporting declaration filed with NNC's motion to dismiss, NNC's Assistant Secretary explained that NNC is a Canadian holding company that does not, and did not, manufacture, use, sell, or offer for sale products in

---

[1]     RTI dismissed its claims against Verizon with prejudice on March 25, 2003.

04-1212                                    2

the United States. He further declared that NNC is not a successor in interest to any company that manufactured, used, sold, or offered for sale products accused of infringement in this action. Instead, NNC's Assistant Secretary stated that NNC wholly owns Nortel Networks Limited, which, in turn, wholly owns NNI. "All operations of the Nortel Networks companies in the United States," NNC clarified, "are conducted by subsidiaries such as [NNI]."

The parties commenced discovery on February 10, 2003.[2] Nine days later, RTI deposed NNC's designee under Fed. R. Civ. P. 30(b)(6), Donald Powers, an in-house attorney for NNI. Mr. Powers confirmed that NNC, a Canadian holding company, never manufactured or sold any products. Mr. Powers also testified that NNC's predecessor in interest, New Nortel Inc., did not manufacture or sell any products. Mr. Powers further explained that NNI — Nortel Networks Inc., formerly known as Northern Telecom Inc. — may have manufactured or sold at least some of the accused products between 1996 and 1998, the period of alleged infringement. RTI deposed no other NNI employees, although discovery continued into September.

On February 24, 2003, the Magistrate Judge issued a scheduling order setting a deadline of June 24, 2003 for joining additional parties to the suit.[3] Despite Mr. Powers'

---

[2]      The district court assigned a Magistrate Judge to preside over discovery matters.

[3]      Although the scheduling order is not part of the record on appeal, the docket sheet in this action indicates the Magistrate ruled that: "Joinder of additional parties due by 6/24/03. Additionally, this question may be re-visited after Judge Wexler's resolution of additional dismissal motions. To [the] extent counts are dismissed and require additional joinder, the parties will have 30 days after decision on these motions to request additional joinder. This latter provision is not intended to lift the 'good cause' standard for joinder motions."

04-1212                                     3

testimony on February 19, 2003, RTI did not seek to join NNI as a party to the action by the June 24, 2003 deadline.

In early September 2003, the Magistrate Judge scheduled a discovery status conference for October 9, 2003. That conference never transpired, however, because on September 22, 2003, the district court issued an order staying all proceedings and setting oral argument on NNC's January motion to dismiss for lack of personal jurisdiction. The district court's order stressed that, to date, RTI had failed to present any evidence contradicting NNC's Rule 12(b)(2) motion, yet afforded RTI the opportunity to submit any evidence obtained in discovery supporting its allegations of personal jurisdiction over NNC.

On October 15, 2003, RTI filed a supplemental opposition to NNC's motion to dismiss its first amended complaint, again alleging jurisdiction over NNC by virtue of its purported status as a successor in interest to Nortel companies that engaged in infringing activities, despite the uncontradicted testimony to the contrary. RTI further argued that NNC waived its jurisdictional objections by filing permissive counterclaims against RTI in its answer. As Exhibit 1 to its supplemental opposition, RTI attached a purported counterclaim-in-reply for infringement of the '668 patent, naming both NNC and NNI as counterclaim defendants. As to NNC, the counterclaim-in-reply repeated verbatim the infringement allegations in RTI's amended complaint.

RTI did not serve its supplemental opposition, including the attached counterclaim-in-reply, on NNI, a nonparty to the proceeding. RTI did serve NNC, which did not respond to the purported counterclaim-in-reply. On December 3, 2003, RTI moved for entry of default judgment against NNC for failing to respond to its

counterclaim-in-reply.   On the same day, however, after hearing oral argument, the court ruled from the bench, dismissing both RTI's complaint and its purported counterclaim-in-reply.

The court issued its written opinion the next day, December 4, 2003.   The district court ruled that NNC did not waive its personal jurisdiction defense, as it had properly raised its jurisdictional objections from the inception of the litigation.   The court further ruled that, despite discovery, RTI had presented no evidence to contradict the basic facts testified to by NNC that it is not the successor in interest to any Nortel entity that made, used, sold, or offered to sell the accused products, but is instead merely a Canadian holding company, one lacking even minimum contacts with the State of New York.   Similarly, the court reasoned that even though RTI had long known of NNI's existence, it failed (1) to allege that NNI is a "mere department" of NNC, which, if proven, would provide jurisdiction over NNC, or (2) to properly name and serve NNI as a defendant to the suit.   The district court thus concluded that "the successor status of NNI and/or any relationship between NNI and NNC has no relevance to this motion."   The court, consequently, dismissed the entire action for lack of personal jurisdiction over NNC.

RTI timely appealed.   We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

I

The issues on appeal are narrow.   RTI does not appeal the district court's determination that it had failed to prove personal jurisdiction over NNC under its "successor in interest" theory.   RTI instead challenges the district court's dismissal of its

amended complaint and counterclaim-in-reply for three reasons.  First, RTI argues the court erred in dismissing its amended complaint, as NNC submitted to personal jurisdiction in the district court by filing permissive counterclaims for declaratory judgment on the '085 and '769 patents.  The dismissal was especially improper, RTI claims, because it had no opportunity to take full discovery on the question of personal jurisdiction.  Second, RTI contests the district court's dismissal of its counterclaim-in-reply.  RTI argues that it properly "filed its counterclaim against NNC in large part to get past NNC's now-moot jurisdictional motion as to RTI's amended complaint." Accordingly, RTI claims that the district court's <u>sua</u> <u>sponte</u> dismissal of that counterclaim-in-reply violated the rules of procedure and its due process rights.  Third, RTI contends that the district court's dismissal of claims against NNI was equally improper because a new party may be named as a counter-defendant in a newly-filed counterclaim without leave of court, so long as the claims against that new party relate to a counterclaim against an existing party.  RTI argues its claims against NNI were, in fact, identical to its counterclaims against NNC, the existing defendant.  Moreover, as the 120-day time period for serving NNI had not yet expired, the district court should have given RTI notice of any intent to dismiss its counterclaim-in-reply against NNI as not timely served, as required by Fed. R. Civ. P. 4(m).

In addition, RTI contends that the district court erred in denying its motion for a default judgment against NNC on its so-called counterclaim.  Because NNC simply chose not to respond to RTI's counterclaim and thus cannot show "excusable neglect" to avoid default, RTI argues, the district court was without discretion to decline entry of default judgment.

04-1212                                            6

NNC responds that no jurisdictional waiver occurred.   NNC explains that to preserve the defense of lack of personal jurisdiction under the Federal Rules of Civil Procedure, a defendant need only assert it in its first responsive filing, which it did in its answer and amended answer.   NNC further argues that RTI's purported counterclaim-in-reply constitutes an improper pleading, wholly duplicative of the amended complaint. What is more, NNC argues that the counterclaim was never properly filed with the court or served on NNC, but instead was merely attached as an exhibit to a supplemental opposition to NNC's motion to dismiss.   With respect to NNI, NNC contends that RTI's counterclaim was untimely filed without leave of court some four months past the June 24, 2003 deadline for joining new parties.

II

We apply our own law, not that of the regional circuit, to issues of personal jurisdiction in a patent infringement case.   Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998).   This court places waiver of personal jurisdiction within the discretion of the trial court, consistent with the trial court's broad authority to manage actions pending before it.   See United States v. Ziegler Bolt & Parts Co., 111 F.3d 878, 882 (Fed. Cir. 1997) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43-46 (1991)).   "On appeal, this court defers to the judgment of the trial court on such matters closely associated with the standard functions of the adjudicative process, so long as that judgment is not an abuse of the trial court's discretion."   Id.

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."   Ins. Corp. of Ir. Ltd., v.

04-1212                                    7

<u>Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 703 (1982).  To this end, Fed. R.

Civ. P. 12(h)(1) establishes that

> [a] defense of lack of jurisdiction over the person, improper venue,
> insufficiency of process, or insufficiency of service of process is waived ...
> if it is neither made by motion under this rule nor included in a responsive
> pleading or an amendment thereof permitted by Rule 15(a) to be made as
> a matter of course.

Rule 12(h)(1) "advises a litigant to exercise great diligence in challenging personal

jurisdiction, venue or service of process."  5C Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 1391 (3d ed. 2004).  These defenses must be raised

"at the time the first significant defensive move is made — whether it be by way of a

Rule 12 motion or in a responsive pleading."  <u>Id.</u>

Here, the parties do not dispute that NNC objected to personal jurisdiction in a

timely manner, in its answer and again in its amended answer.  Similarly, RTI does not

contest that NNC moved to dismiss the amended complaint for lack of personal

jurisdiction as soon as it obtained the required leave of the district court, which it

promptly sought.  Thus, NNC satisfied the requirements of Rule 12(h)(1).

Despite NNC's compliance with Rule 12(h)(1), RTI contends that NNC

nevertheless submitted to personal jurisdiction in the district court simply by filing

permissive counterclaims.  We disagree.  We hold that filing a counterclaim, compulsory

or permissive, cannot waive a party's objections to personal jurisdiction, so long as the

requirements of Rule 12(h)(1) are satisfied.  Indeed, holding to the contrary would

effectively eliminate the unqualified right provided by Rule 12(b) of raising jurisdictional

defenses either by motion or answer.[4]   As the Third Circuit stated in <u>Neifeld v.</u> <u>Steinberg</u>, 438 F.2d 423, 428-29 (3d Cir. 1971),

> [i]f we were to take the position that a defendant, by raising his jurisdictional defenses in the same pleading in which he asserted a counterclaim, waived his jurisdictional defenses, we would in effect be engrafting a judicial exception to Rule 12(b).  We would be requiring a defendant to raise his jurisdictional defenses by motion when he intends to file a counterclaim in his responsive pleading.  This requirement would be contrary to the option provided to the defendant in Rule 12(b).

We agree with this view, shared by several of our sister circuits.  <u>See, e.g.</u>, <u>Bayou Steel Corp. v. M/V Amstelvoorn</u>, 809 F.2d 1147, 1149 (5th Cir. 1987) ("We now adopt what we consider to be the better reasoned and prevailing view, and hold that the filing of a counter-claim, cross-claim, or third-party demand does not operate as a waiver of an objection to jurisdiction, whether that objection is raised by motion or answer, provided that the objection is not otherwise waived in the course of the litigation.");  <u>Gates Learjet Corp. v. Jensen</u>, 743 F.2d 1325, 1330 (9th Cir. 1984) (Rule 12(b) of the Federal Rules of Civil procedure "implicitly authorizes a defendant to join a jurisdictional defense with a counterclaim without waiving this defense.");  <u>Chase v. Pan-Pac. Broad., Inc.</u>, 750 F.2d 131, 132 (D.C. Cir. 1984) ("The holding that a defendant may not state in an answer both a jurisdictional defense and a counterclaim is inconsistent with the design and purpose of the pleading prescriptions set out in the Federal Rules of Civil Procedure.").

---

[4]    <u>See</u> <u>Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.</u>, 292 F.3d 1363, 1372 (Fed. Cir. 2002) (noting that personal jurisdiction is not waived "where an unrelated claim is brought as a permissive counterclaim against the plaintiff" if the proper objection is raised by motion or answer).

04-1212                                    9

Nor has any contrary holding of another circuit been cited to us by RTI.[5] Thus, RTI's waiver argument must be rejected.

The cases on which RTI relies are readily distinguishable. In <u>Hamilton v. Atlas Turner, Inc.</u>, 197 F.3d 58 (2d Cir. 1999), defendants participated in four years of litigation before moving to dismiss under Rule 12(b)(2). The Second Circuit thus concluded that "Atlas forfeited its defense of lack of personal jurisdiction by participating in extensive pretrial proceedings and forgoing numerous opportunities to move to dismiss during the four-year interval that followed its inclusion of the defense in its answer." <u>Id.</u> at 62. Similarly, in <u>Trustees of Central Laborers' Welfare Fund v. Lowery</u>, 924 F.2d 731 (7th Cir. 1991), after participating in intensive post-judgment proceedings, defendants moved to vacate the default judgment entered against them six years earlier. <u>Id.</u> at 732-33. The defendants claimed that the plaintiff's failure to properly serve them at the beginning of the lawsuit (in 1982) rendered the judgment void. The Seventh Circuit held that the defendants had waived their Rule 12(h)(1) objections, explaining that "[t]he conduct engaged in by both the defendants and their attorney over a six year period indicated to the plaintiffs that service had been properly effectuated and that no such defense would be raised." <u>Id.</u> at 734. Neither <u>Hamilton</u> nor <u>Lowery</u> is

---

[5]     RTI's reply brief references <u>General Contracting & Trading Co. v. Interpole, Inc.</u>, 940 F.2d 20 (1st Cir. 1991), in support of its waiver argument. RTI's invocation of <u>Interpole</u> is wholly misplaced as that case involved a third-party defendant, Trastco, who objected to personal jurisdiction in the New Hampshire district court, yet filed a new suit in the same court based on the same transaction as the original complaint and third-party complaint. <u>Id.</u> at 21. Holding that Trastco submitted itself to jurisdiction in New Hampshire, the <u>Interpole</u> court specifically rejected Trastco's argument that it did not waive jurisdictional objections in the first suit by bringing the second because the second suit was essentially a counterclaim. <u>Id.</u> at 24. "We reject the contention that being a plaintiff in an independent, later-filed suit is, or should be treated as, the functional equivalent of being a counter-claimant." <u>Id.</u>

04-1212                            10

relevant to this case.  While a party may consent to personal jurisdiction by extensively participating in the litigation without timely seeking dismissal, this is not such a case. Here, NNC did not dally, but moved to dismiss on jurisdictional grounds at its earliest opportunity.

In sum, NNC complied with Rule 12(h)(1) by objecting to personal jurisdiction in its answer and amended answer.  The mere fact that NNC included permissive counterclaims for declaratory judgment on the '085 and '769 patents cannot effect waiver of personal jurisdiction.  Furthermore, NNC moved to dismiss the amended complaint under Rule 12(b)(2) within days of promptly obtaining the required leave from the district court.  We thus affirm the district court's dismissal of RTI's first amended complaint and the so-called counterclaim-in-reply as to NNC for lack of personal jurisdiction over NNC.[6]

Moreover, we are unpersuaded by RTI's contention that the district court's sua sponte dismissal of its counterclaim-in-reply somehow deprived it of due process. Because NNC's permissive counterclaims did not submit it to jurisdiction in the United States District Court for the Eastern District of New York, the district court had no more authority to entertain RTI's so-called counterclaim-in-reply against NNC than it did to hear the amended complaint in the first place.  RTI cites no authority, and we are aware

---

[6]     Even absent the jurisdictional defect, RTI's counterclaim-in-reply against NNC would fail on other grounds.  Most notably, as RTI admits, the counterclaim-in-reply against NNC merely restates the same infringement claims already asserted in the first amended complaint.  As such, it is wholly duplicative.  Surely, the district court would not abuse its discretion in dismissing this pleading as redundant.  Further, we question whether merely attaching the counterclaim as an exhibit to an opposition to a motion can constitute a proper filing with the district court.  In view of the other infirmities plaguing RTI's counterclaim-in-reply, however, we need not resolve the soundness of its filing.  Likewise, we need not reach RTI's arguments regarding the district court's denial of its motion for default judgment.

of none, requiring the district court to give notice under such circumstances before dismissing this purported pleading.

III

RTI's counterclaim, in so far as it names NNI as a defendant, is also defective because it was untimely filed some four months after the June 24, 2003 deadline for joining additional parties without leave of court. The proper course of conduct for RTI would have been to seek leave of the district court to join NNI as a defendant to the suit prior to the June 24 cutoff.[7] RTI's failure to seek such leave, much less to do so in a timely fashion, renders its purported counterclaim-in-reply improper.

The district court stated that because it was never served with process, "NNI is not now, no[r] has it ever been, a party to this action." RTI argues that dismissal was improper because it had 120 days to serve NNI and, in any event, the court must provide notice before <u>sua sponte</u> dismissing for failure to serve. <u>See</u> Fed. R. Civ. P. 4(m).[8] Because we hold that RTI's so-called counterclaim against NNI was improper as filed without leave of court, we need not reach that argument. Therefore, the district court did not abuse its discretion in dismissing the counterclaim-in-reply against NNI.

---

[7]     Even if the court's scheduling order were read, as RTI suggests, to permit joinder within thirty days of the court's ruling on NNC's motion to dismiss, the district court clearly stated that "[t]his latter provision is not intended to lift the 'good cause' standard for joinder motions." RTI provides no evidence that it met the "good cause" requirement when it submitted its counterclaim-in-reply. RTI, therefore, failed to demonstrate that its counterclaim-in-reply against NNI was otherwise properly filed.

[8]     Fed. R. Civ. P. 4(m) states, in relevant part: "If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant . . . ."

04-1212                                    12

## IV

Finally, we must dispense with RTI's discovery complaints.  Despite its protests that it had no opportunity to conduct effective discovery, RTI points to no adverse discovery ruling by the district court, particularly no denial of any motion to enlarge discovery or compel production.  As such, RTI presents nothing for us to review on appeal.  Appellate courts are not in the business of redressing discovery discontents absent a reviewable order from a district court.  Here, none exists.

We note, moreover, that RTI conducted seven months of discovery.  In fact, only nine days after discovery commenced, RTI learned the corporate structure of the relevant Nortel group from deposing NNC's Rule 30(b)(6) representative.  Mr. Powers testified that NNC wholly owns Nortel Networks Ltd., which wholly owns NNI, the corporate entity that may have manufactured, used, sold, or offered for sale some of the accused products.  RTI also knew of NNI's representative designated for receiving service of process.  RTI, nevertheless, ignored this critical information and, therefore, has only itself to blame for missed discovery opportunities.  In any event, we conclude that no discovery issue is properly before us on appeal.

## CONCLUSION

For these reasons, the district court's dismissal of the entire action is

<u>AFFIRMED</u>.

04-1212                                    13